HENRY L. HOPKINS, AS SURVIVING PARTNER, &c., *Plaintiff in Error*, v. THE COUNTY OF LEON, *Defendant in Error.*

Opinion Filed January 26, 1917.

Petition for Rehearing Denied March 2, 1917.

In an action at law brought by H. as surviving partner, &c., against Leon County for the recovery of the contract price for the building of a bridge, wherein the following minutes of a meeting of the Board of County Commissioners of Leon County were introduced in evidence by the plaintiff, which were admitted to be correct:

"County Clerk's Office,
"Tallahassee, Fla. May 7th, 1907.

"The Board met pursuant to adjournment, there being present E. C. Smith, Chairman, R. G. Johnson, J. W. Collins, W. D. Stoutamire and W. A. Register.

"Hon. A. L. Wilson, member of the Board of County Commissioners of Gadsden County, met with this Board to consider the building of a bridge across the Ocklockonee River at McCall's Landing.

"The following bids were received for building a bridge across the Ocklockonee River at McCall's Landing, to-wit: E. G. Richards, $1,850.00; C. W. Blount, $1,900; H. L. McElvy & H. L. Hopkins, $2448.00; H. L. Hopkins, $4.90 per foot, length 612 feet, $2,998.00.

"Contract to build bridge across the Ocklockonee River at what is known as McCall's Landing was awarded to H. L. McElvy & H. L. Hopkins, and for which this Board becomes responsible and promises to pay as Leon County's part in the construction of said bridge $1,224.00 when said bridge is completed, inspected and accepted by the Boards of County Commissioners of

Leon and Gadsden Counties.   This Board promises to pay $1,224.00 and no more for its part of the cost in the construction of said bridge.

"Approved June 4, 1907.      E. C. SMITH, *Chairman.*"

*Held,* that such minutes show upon their face that a valid contract had been made and entered into by such county with H. to construct such bridge for the sum of $2,448.00, of which amount such county became responsible for and promised to pay as its part in the construction thereof the sum of $1,224.00 when such bridge was completed, inspected and accepted by the Boards of County Commissioners of Leon and Gadsden Counties, and, when the evidence adduced establishes the construction of such bridge in accordance with the provisions of the contract, the plaintiff is entitled to recover from Leon County the amount for which such county became liable by such contract.

Writ of Error to Circuit Court for Leon County; E. C. Love, Judge.

Judgment reversed.

*Jos. A. Edmondson* and *W. C. Hodges,* for Plaintiff in Error;

*Fred T. Myers,* for Defendant in Error.

SHACKLEFORD, J.—Henry L. Hopkins, as surviving partner of the firm lately doing business under the name of H. L. McElvy and H. L. Hopkins, instituted an action at law against the County of Leon, in the State of Florida, for the recovery of the contract price for building

a bridge across the Ocklockonee River.   The first count of the amended declaration is as follows:

"Henry L. Hopkins, as surviving partner of the firm lately doing business under the firm name of H. L. Mc-Elvy and H. L. Hopkins, by W. C. Hodges, and Joseph A. Edmondson; his attorneys, says:

" 'For that by an agreement made between the said H. L. McElvy and the said Henry L. Hopkins, and the said defendant, the said H. L. McElvy and the said Henry L. Hopkins agreed to build for the defendant, a bridge across the Ocklocknee River, at what is known as McCall's Landing; in consideration thereof the defendant promised to pay to the said firm, Twelve hundred and twenty-four ($1,224.00) dollars, when said bridge was completed, inspected and accepted by the Board of County Commissioners of said County of Leon, and the Board of County Commissioners of Gadsden County, Florida; that after said firm undertook the building of said bridge and before the same was completed, the said H. L. McElvy died, and the said Henry L. Hopkins completed the building of said bridge; and although the said bridge has been built in accordance with the terms of said agreement and due notice thereof has been given to the County Commissioners of said County of Leon, and the County Commissioners of said County of Gadsden, and the plaintiff has requested the said Commissioners of both of said counties to inspect and accept said bridge, the said Commissioners of both of said counties have unreasonably and arbitrarily failed and neglected to inspect and accept said bridge, and the said defendant has not paid to plaintiff the said sum of twelve hundred and twenty-four ($1,224.00) dollars, though payment thereof has been demanded.' "

The second count differs from the first only in that it alleges that the Commissioners of both counties (Leon

and Gadsden), "have unreasonably and arbitrarily re-
fused to inspect and accept said bridge." The declara-
tion also has the common counts, but they were aban-
doned.

The defendant filed the following pleas:

"(1) For a first plea to the first and second counts
of said declaration, and to each thereof, the defendant
says that it did not promise as alleged.

"(2) And for a second plea to the first and second
counts of the said declaration, and to each thereof, the
defendant says that the Board of County Commissioners
of Leon County, Florida, on to-wit: April 2nd, 1907,
advertised that sealed bids would be received at the County
Clerk's office until ten o'clock A. M. Tuesday the 6th day
of May, A. D. 1907, for the construction of a wooden
bridge across the Ocklocknee River at what is known as
McCall's Landing, the bridge to be of sufficient length
to cover the first slough on the Gadsden County side of
the river, according to plans and specifications at the of-
fice of the County Clerk, the said Board reserving the
right to reject any and all bids; and the said H. L. Mc-
Elvy and H. L. Hopkins pursuant to said notice submit-
ted to the said Board of County Commissioners a bid to
build such bridge for the sum of $2,448.00, which bid was
accepted but with the understanding, however, between the
said Board of County Commissioners and the said H. L.
McElvy and H. L. Hopkins that the County of Leon
would pay half of the amount of said bid if the County
of Gadsden through its board of County Commissioners
would agree to pay the other half thereof; but the Board
of County Commissioners of Gadsden County refused
to enter into said agreement, and would not agree to pay
one-half of the amount bid as aforesaid by the said Mc-
Elvy and Hopkins for the construction of said bridge,
and because of such refusal no contract was ever made or

entered into between the said McElvy and Hopkins and the County of Leon for the building and construction of said bridge.

"(3) And for a third plea to the first and second counts of the said declaration the defendant says that the defendant accepted a bid of the said H. L. McElvy and H. L. Hopkins to build the bridge mentioned in the declaration for the sum of $2,448.00 and agreed to pay one-half of said amount on condition that the County of Gadsden would pay the other half, the said sum to be paid when said bridge was completed, inspected and accepted by the Boards of County Commissioners of Leon and Gadsden Counties; and the defendant having waited a long time, to-wit: until January 11th, 1908, for the County of Gadsden to enter into said agreement to pay one-half of the amount bid for the construction of said bridge, and the said County of Gadsden having refused to enter into such agreement, and having failed and refused to pay one-half of the amount so bid for the construction of said bridge, the defendant then and there, and before the commencement of said work, notified the said H. L. McElvy and H. L. Hopkins not to proceed with the construction of said bridge, and that the defendant would not be bound by said agreement; and while the said McElvy recognized the right of the defendant to revoke said agreement, the said Hopkins, notwithstanding the said notice and over the objection of the defendant, proceeded with the work of constructing said bridge; and the said bridge has never been accepted by the Boards of County Commissioners of the Counties of Leon and Gadsden as a public bridge for the reasons aforesaid, and not unreasonably and arbitrarily as alleged by the plaintiff.

"(4) And for a fourth plea to the first and second

counts of the said declaration, and to each thereof, the defendant says that the alleged agreement and promise of defendant to pay the said H. L. McElvy and H. I. Hopkins the sum of $1,224.00 for the construction of the bridge mentioned in the declaration was conditioned on the County of Gadsden agreeing to pay a like sum, which the said County of Gadsden refused to do, and the defendant before the commencement of the work on said bridge notified the plaintiff not to proceed therewith."

Issue was joined upon these pleas and a trial was had before a jury, which resulted in a verdict and judgment in favor of the defendant, which judgment the plaintiff has brought here for review. The only assignment of error is based upon the overruling of the motion for a new trial. The grounds of this motion are as follows:

"First. That the verdict was contrary to the evidence

"Second. That the verdict was contrary to law.

"Third. That the verdict was contrary to law and the evidence.

"Fourth. That the court erred in charging the jury as follows: If you believe from the evidence that H. L. McElvy and H. L. Hopkins in response to an advertisement by the County Commissioners of defendant county for bids to construct a bridge over the Ocklockonee River at McCall's Landing, filed with the said Board of County Commissioners a bid to construct said bridge for a named sum according to certain plans and specifications on file with the Clerk of said Board, and that said bid was accepted by the said Board, they agreeing by the resolution of acceptance to pay one-half of the amount for which the said McElvy and Hopkins offered to build said bridge, the share of said county, and that it was understood by said Board of County Commissioners and the said McElvy and Hopkins that the County of Gadsden

was to pay the other half of the amount so bid, and that a contract would subsequently be entered into between the said McElvy and Hopkins on the one part, and the Counties of Leon and Gadsden on the other part, whereby each of said counties would bind itself to pay one-half the amount for which the said McElvy and Hopkins offered to build the proposed bridge, and the said McElvy and Hopkins would bind themselves to build said proposed bridge according to plans and specifications for the price bid by them, and that after the County of Leon accepted said bid and agreed to pay one-half of the amount so bid, the County of Gadsden through its Board of County Commissioners refused to agree to pay one-half of the amount so bid by the said McElvy and Hopkins as its part of the cost of constructing said bridge, and that no contract was entered into between the said McElvy and Hopkins on the one part, to build the said bridge according to the plans and specifications, and on the part of the said Counties of Leon and Gadsden to pay each one half of the amount for which the said McElvy and Hopkins agreed to build the proposed bridge, then you should find for the defendant, Leon County.

"Fifth.   That the court erred in charging the jury as follows:  If you find from the evidence that H. L. McElvy and H. L. Hopkins in response to an advertisement by the County Commissioners of Leon County for bids to build a bridge over the Ocklockonee River at or near McCall's Landing submitted a bid proposing to build such bridge for the sum of $2,448.00, and said bid was accepted by the said Board of County Commissioners, they in their resolution accepting said bid agreeing to pay $1,224.00 as Leon County's share of the amount for which the said McElvy and Hopkins offered to build said bridge, and no further or other agreement was ever

made with respect to the proposed bridge between this said Board of County Commissioners and the said Mc-Elvy and Hopkins, then I charge you that there was no express contract between the said McElvy & Hopkins and the said County of Leon for the construction of said bridge, and you should find for the defendant, Leon County, on the first and second counts of declaration.

"Sixth.    That the court erred in charging the jury as follows: I further charge you that if you believe from the evidence that H. L. McElvy and H. L. Hopkins in response to an advertisement by the County Commissioners of Leon County for bids to build a bridge over the Ocklockonee River at or near McCall's Landing submitted a bid proposing to build such bridge for the sum of $2,448.00, and such bid was accepted by the said Board of County Commissioners, they in their resolution accepting said bid agreeing to pay $1,224.00 as Leon County's share of the amount for which the said McElvy & Hopkins offered to build said bridge, and no further or other agreement was ever made with respect to the construction of the proposed bridge between the said Mc-Elvy & Hopkins and the said Board of County Commissioners; and the said McElvy & Hopkins began the construction of said bridge under such circumstances and continued it to completion without the consent or approval of the Board of County Commissioners, otherwise than as expressed in the said resolution accepting said bid, and since the completion of the said bridge it has never been accepted by the said Board, then you should find for the defendant, the County of Leon."

All of these grounds are argued, the first three being grouped together.    It becomes necessary for us to examine the evidence adduced in connection with the pleadings in

order that we may determine whether or not these grounds are well urged.

The plaintiff first introduced in evidence the minutes of the meeting of the Board of County Commissioners of Leon County, held on the 7th day of May, 1907, which were admitted by the defendant to be such minutes and which read as follows:

"County Clerk's Office,
"Tallahassee, Fla., May 7th, 1907.

"The Board met pursuant to adjournment, there being present E. C. Smith, Chairman, R. G. Johnson, J. W. Collins, W. D. Stoutamire and W. A. Register.

"Hon. A. L. Wilson, member of the Board of County Commissioners of Gadsden County met with this Board to consider the building of a bridge across the Ocklockonee River at McCall's Landing.

"The following bids were received for building a bridge across the Ocklockonee River at McCall's Landing, to-wit: E. G. Richards, $1,850.00; C. W. Blount, $1,900.00; H. L. McElvy & H. L. Hopkins, $2,448.00; H. L. Hopkins $4.90 per foot, length 612 feet, $2,998.00.

"Contract to build bridge across the Ocklockonee River at what is known as McCall's Landing was awarded to H. L. McElvy & H. L. Hopkins, and for which this Board becomes responsible and promises to pay as Leon County's part in the construction of said bridge $1,224.00 when said bridge is completed, inspected and accepted by the Boards of County Commissioners of Leon and Gadsden Counties. This Board promises to pay $1,224.00 and no more for its part of the cost in the construction of said bridge.

"Approved June 4, 1907.        E. C. SMITH, Chairman."

The plaintiff was then introduced as a witness in his own behalf and proceeded to testify as follows:

"My name is Henry L. Hopkins.  I knew H. L. Mc-
Elvy in his life time he is dead now.  I am Henry L.
Hopkins, and the McElvy I just mentioned was the Mc-
Elvy mentioned in that record you have just read.  1
offered to construct, and did construct, a bridge at Mc-
Call's Landing, the length of the bridge as I agreed to
build it, and as the record will show, was 612 feet.  I
built 634 feet.  The width of the bridge was to be the
width of the roadway, which is fourteen feet, that is
what it called for and that is what I built.  Mr. McElvy
was in partnership with me when the bridge was being
built, but before the bridge was completed he had died."

The witness then goes on at length to testify as to
the building of the bridge, giving in detail the facts and
circumstances in connection therewith and explaining the
causes of his delay in completing the work.  He stated
that he "completed the bridge and turned it over to the
county for inspection July 15th, 1911," adding that he
"notified them."  He further testified that he did not
receive any notice from the Board of County Commis-
sioners before he began putting material on the ground
that they had attempted to vacate that contract; that he
had been at work on that bridge for eight months before
the county commissioners attempted to rescind the con-
tract and notified him that they were not going to pay
for it, and that there was then something over $500.00
worth of work there.  The witness further testified as
follows:  "When it come to the paying part the County
Commissioners of Leon County would not inspect that
bridge, and never have inspected it, but I requested that
they do so.  I come right here before the Board and
requested it.  On the completion of the bridge I made
that request by written notice.  I then come to town and
told them in person.  Their excuse for not inspecting it

was that they wanted a little time, that they had no money. no-how, and wanted me to give them a chance, that was Leon County. Immediately after the completion of the bridge I sent them the written notice to inspect my bridge. And the very next month after I sent the written notice to inspect the bridge I come to town and asked them why they didn't come down and inspect it. I had an attorney to appear at the meeting of the Board of County Commissioners and requested them to go down there and inspect and accept or reject that bridge. His name was Mr. Worth Trammell. He made that request for the inspection of the bridge at my request, and I was present when he requested them to do so. About July 14th, 1911, the bridge was completed and turned over for inspection as completed and it had been put off for inspection. The County Commissioners didn't come down and look over that bridge. I also wrote the Commissioners of Gadsden County and requested them to come down and inspect the bridge, and afterwards went to them. That is the letter I wrote to the Board of County Commissioners of Gadsden County. I addressed it to the Clerk of the Court. That is the original letter I sent to them."

And thereupon the plaintiff produced and offered in evidence the said letter in words and figures following, to-wit:

"Holland, Fla., June 29, 1911.

"Hon. Board of County Commissioners for Leon and Gadsden County, Fla.

"You are hereby cordially invited to Fish Fry Picnic at McCall Bridge on the Ocklockonee River on July 15 next at which time I will ask you to inspect the Bridge built by me.                "Respectfully,

"HENRY L. HOPKINS."

"The County Commissioners of Leon County and the County Commissioners of Gadsden County didn't show up after I got the bridge over McCall's Landing completed. I went before the County Commissioners of Gadsden County and asked for an inspection personally. They said the bids were advertised in this county, and the specifications filed in this county, and that they knew practically nothing about the plans, and they were ready and willing to pay their part when they had a chance to do it, and for me to get a settlement from this county first. I didn't understand it that the $1,224.00 this county agreed to pay had anything to do with Gadsden County. That was all this county agreed to pay and all I ever asked them for, and I haven't got a cent.".

On cross-examination, the witness testified as follows: "The only agreement which I have with them, or claimed agreement, is the resolution of the Board of County Commissioners of Leon County which you (Mr. F. T. Myers) have just read here, except some verbal talk. There is no other written agreement between them and myself. So far as any contract between me and the County Commissioners of Leon County is concerned it rests upon this resolution of the Board of May 7th, 1907. That is all signed by the Chairman of the Board. I took a copy of it that day, and I have it now. That resolution shows a bid by H. L. McElvy and H. L. Hopkins to build this bridge for $2,448.00 and this bid was made in response to an advertisement by the County of Leon. $1,224.00 is all the Board of County Commissioners have ever promised to pay me for their part in the construction of said bridge, and all I ask from Leon County. I was present at the meeting when this bid was accepted. I didn't expect them to pay me any more than $1,224.00. I agreed to build the bridge for $2,448.00, and Gadsden

County was to pay the other $1,224.00.   Mr. A. L. Wilson, a County Commissioner of Gadsden County was present at a meeting of this Board, and I knew the object of his presence.   I contemplated the building of a bridge for which I was to be paid $2,448.00, and I expected Leon County to pay me $1,224.00 of that amount, and Gadsden County the other half, and I have an agreement with them, you know, I think it is on file there, and the maximum amount that they offered to pay me in consideration of the construction of the bridge at McCall's Landing was $750.00, which they never refused to pay.. I never entered into a written agreement with them more than they agreed to pay it.   The resolution is on their minutes.   The advertisement said that the Clerk of the Court had the plans and specifications for the building of that bridge.   I did not see them before I bid on the work. I had them when I was constructing the work.   My bid was based on the plans and figured on by me and my partner as to what it would cost us.   We bid according to those plans."

The witness then proceeded to testify as to certain matters connected with the building of the bridge and as to the delay, which are not material here.   On his re-direct examination the witness stated that "The County is using the bridge now but won't pay for it."

Other witnesses were introduced on behalf of the plaintiff, whose testimony we have carefully examined, but do not consider it necessary to set it out or discuss it. Several witnesses were also introduced by the defendant, as well as certain documentary evidence, consisting of copies of the minutes of certain meetings of the respective Boards of County Commissioners of the counties of Leon and Gadsden, and also a letter to Mr. W. D. Stoutamire, a County Commissioner of Leon County, from Mr.

A. L. Wilson, a County Commissioner of Gadsden County, all of which evidence we have examined, but are of the opinion that such evidence throws very little light upon the controversy between the litigants. The defendant also introduced the following letter, which presumably is the letter by the plaintiff in his testimony, though this is not made entirely clear:

"Tallahassee, Fla., Jan. 11, 1908.
"H. T. Felkel,
        "Clerk Circuit Court,
                "Leon County, Fla.
    "To H. L. McElvy & H. L. Hopkins,
"Gentlemen:

"At a meeting of the Board of the County Commissioners of Leon County, Florida, held on Tuesday the 7th day of January, 1908, it was ordered by the Board that the contract or agreement to build the bridge across the Ocklockonee River at McCall Landing, be cancelled and annulled, and said agreement hereafter to be without force or effect, for the reason that ample time has been given in which to construct said bridge, and it has not been built.        "Yours truly,
                    "Henry T. Felkel,
"Clerk Board County Commissioners, Leon County, Fla."

No testimony was introduced as to the County Commissioners of Leon County ever authorizing their Clerk to write this letter, and the minutes of the meeting of such Commissioners for the 7th day of January, 1908, were not offered in evidence.

It is earnestly contended by the defendant that the evidence adduced fails to establish the fact that any contract was ever made or entered into by and between the

plaintiff and the defendant, therefore there could be no recovery. It is argued that the resolution adopted by the County Commissioners of Leon County on the 7th day of May, 1907, which was introduced by the plaintiff and which we have copied above, "did not in terms create a contract between McElvy and Hopkins on the one part and the County of Leon on the other for the construction of said bridge." It is further argued by the defendant "that at the time of the passage of the resolution of May 7th, 1907, that it was contemplated by all parties that Gadsden County should be a party to the contract, and should agree to pay $1,224.00 as its part, being one-half of the amount of the bid made by McElvy and Hopkins for the construction of the bridge.

"This being the case, it necessarily contemplated that the making and acceptance of the bid did not constitute the contract, but that a subsequent contract between the three parties was to be entered into, in which the details of construction would form a part."

Undoubtedly it is true, as the defendant contends, "If the facts and circumstances show that the parties intended subsequently to reduce their understanding to a written contract covering all its terms and conditions, then the original negotiations did not constitute a contract."

We fully approve of the principles of law enunciated in Strong & Trowbridge Co. v. Baars & Co., 60 Fla. 253, 54 South. Rep 92, and Ocala Cooperage Co. v. Florida Cooperage Co., 59 Fla. 390, 52 South. Rep. 13, which are cited us by the defendant. The question which we are called upon to determine is as to whether or not the evidence adduced supports this contention of the defendant. We do not think so. It seems to us that the resolution adopted by the Board of County Commissioners of

8

Leon County plainly shows upon its face that McElvy & Hopkins submitted a bid to such commissioners to build a bridge across the Ocklockonee River for the sum of $2,448.00, that such bid was accepted and the contract awarded to such bidders, and as such resolution explicitly states, "and for which this Board becomes responsible and promises to pay as Leon County's part in the construction of said bridge $1,224.00 when said bridge is completed, inspected and accepted by the Boards of County Commissioners of Leon and Gadsden Counties. This Board promises to pay $1,224.00 and no more for its part of the cost in the construction of said bridge." There would really seem to be no room for construction here. There is no proviso to the effect that a contract must be made and entered into by such successful bidders with the County Commissioners of Gadsden County, and, if the bidders to whom such contract was awarded, failed to make a satisfactory contract with the Commissioners of Gadsden County, that was their look-out, and the failure so to do would not justify the Commissioners of Leon County in failing and refusing to pay as Leon County's part the sum of $1,224.00, in accordance with their agreement. No time is stated in such resolution as to when the bridge was to be completed. That the plaintiff went ahead, treating such resolution as a contract, and constructed the bridge, the testimony indisputably establishes. The testimony further establishes that the defendant considered the resolution to be a binding contract, as W. D. Stoutamire, a member of the Board of County Commissioners of Leon County, was introduced as a witness by the defendant and testified that as such Commissioner he was directed to look after the bridge when its construction was begun, after the contract had been let and that he went there "as much as

once a week for eight months," and that he "received four dollars a day of ten hours when he made these trips." H. T. Felkel, the Clerk of such Board, in the letter which he wrote to the plaintiff on the 11th day of January, 1908, which we have copied above, refers to "the contract or agreement to build the bridge across the Ocklockonee River" and states that the same had been ordered by such Board to "be canceled and annulled."

In fine, we are of the opinion that the evidence established the right of the plaintiff to recover, and that the errors are well assigned for the reasons which we have set forth.

The judgment is reversed.

BROWNE, C. J., and TAYLOR, WHITFIELD and ELLIS, JJ., concur.